_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01860-FWS-DFM                     Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:                     Attorneys Present for Defendant:

Not Present                                          Not Present

**PROCEEDINGS: (IN CHAMBERS) MEMORANDUM OF DECISION**

This case concerns Plaintiff Edward Talley's ("Plaintiff" or "Insured") challenge to Defendant Provident Life and Accident Insurance Company termination of Plaintiff's disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. Defendant filed the Administrative Record. (Dkt. 26 ("AR").) The parties filed trial briefs. (Dkt. 27 (Defendant's Trial Brief, "D. Br."); Dkt. 28 (Plaintiff's Trial Brief, "Pl. Br."); Dkt. 30 (Defendant's Response Brief); Dkt. 29 (Plaintiff's Response Brief).) The court held a one-day trial on this matter. (Dkt. 32.) The court ordered and the parties filed proposed findings of fact and conclusions of law. (Dkts. 32, 34-35.) Based on the state of the record, as applied to the applicable law, the court hereby issues its memorandum of decision.

**I.      Findings of Fact[1]**

**A.      Plaintiff and the Policy**

1.   Plaintiff worked as a Project Team Leader, supervising mechanics, at Johnson Controls, Inc. (AR 138, 311-13, 563, 685, 2485, 3332-33.) Plaintiff is covered by a disability policy (the "Policy") issued by Defendant.

_____

[1] Any finding under this category that is a conclusion of law is also hereby adopted as a conclusion of law.

_____

**CIVIL MINUTES – GENERAL**                                          **1**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                                Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

2.  The Policy provides a maximum monthly benefit amount of $1,957 to the age of 65.  (AR 3412.)  The Policy describes, in pertinent part, the following conditions for an individual to be deemed disabled under the Policy:

> Total Disability or Totally Disabled, during the Usual Occupation Period shown in the Policy Schedule, means that as a result of Sickness or Injury: [/] 1. You are not able to perform with reasonable continuity the Substantial and Material Acts necessary to perform Your Usual Occupation in the usual and customary way; and [/] 2. You choose not to work at any occupation.
>
> . . .
>
> Usual Occupation means any employment, business, trade or profession and the Substantial and Material Acts of the occupation You were regularly performing when the Disability began. Usual Occupation is not necessarily limited to the specific job You performed. (AR 3418.)
>
> . . .
>
> Mental Disorders means any mental or emotional disorder or functional nervous disorder (except dementia resulting from stroke, trauma, infections or degenerative diseases such as Alzheimer's disease).  (AR 3419.)
>
> . . .
>
> Substantial and Material Acts means the important tasks, functions and operations generally required by employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified. In determining what Substantial and Material Acts are necessary to pursue Your Usual Occupation, We will first look at the specific duties required by Your job. If You are unable to perform one or more of these duties with reasonable continuity, We will then determine whether those duties are customarily required of other individuals engaged in Your Usual Occupation.  (AR 3417.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                                Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

3. The Policy limits benefits for Mental Disorders to "24 Months over the life of [the] Policy." (AR 3413.)

**B.      Plaintiff's Medical History and the Disability Claim**

4. To start, on December 2, 2018, Dr. Joey R. Gee examined Plaintiff's cervical spine Magnetic Resonance Imaging ("MRI"), and provided the following impressions: "1. *Mild to moderate degenerative disc disease* without acute cervical fracture or loss of vertebral body height, anatomic vertebral body alignment [/] 2. Multilevel disc osteophyte complexes most notably at the C3-4 and C4-5 levels, thecal sac encroachment is noted without cord effacement. Associated foraminal stenosis bilaterally as described above." (AR 250-51 (emphasis added).)

5. Then, on April 3, 2019, Plaintiff underwent a PET metabolic evaluation which had the following findings: "Head and neck: Decreased FDG activity is seen involving the anterior temporal lobes and superior parietal lobes . . . . Impression: 1. Decreased FDG activity in the anterior temporal lobes and superior parietal lobes *consistent with Alzheimer's disease*." (AR 221, 2900-03 (emphasis added).)

6. Following these examinations, Plaintiff submitted an individual disability claim, reporting a disability date of February 12, 2019, due to "Cognitive loss/Brain dysfunction/Major Depressive Disorder/Memory Loss." (AR 72.) Before his disabilities began, Plaintiff describes his activities as follows: "Working, driving, financial/project mgmnt., customer relations, scheduling, billing." (AR 73.) Additionally, Plaintiff completed an occupation description form in which he identified his occupational duties as project management and that he spent 40 hours per week managing the company's business, such as budgeting, scheduling, billing, and customer relations. (AR 78.) Plaintiff confirmed his occupation did not require physical activity, such as sitting, standing, walking, pushing, pulling, and lifting, more than occasionally, which was defined as 1% to 33% of the time spent during an 8-hour workday. (AR 79.)

7. During a call on November 1, 2019, between Defendant and Plaintiff, Defendant told Plaintiff that his disability form indicates that he first had symptoms on February 12th,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                     Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

and asked "if [Plaintiff] had any symptoms prior," to which Plaintiff said, "not really."
(AR 211.)  When asked "if [Plaintiff] performed physical labor or if he was supervisory"
in his occupation, Plaintiff responded that he would just supervise but he might need to
climb a ladder or climb through a small area to see what was going on at times.  (AR
212.)

8.  Defendant received an Attending Physician Statement ("APS") from psychologist Lynda
    Heffend, stating that Plaintiff has major depression, severe cognitive impairment, and
    cannot follow simple instructions, and that he is fatigued easily, requires at least 2 naps
    per day, receives individual psychotherapy, and that it is impossible to tell when he is
    expected to improve.  (AR 187-89.)  Defendant also received an APS from Dr. Gee who
    identified "cognitive disorder" as a primary diagnosis that may impact Plaintiff's
    functional capacity.  (AR 91.)

9.  Plaintiff's employer, Johnson Controls, completed a questionnaire and disclosed that it
    only knew Plaintiff submitted a disability claim and that he last worked on February 11,
    2019.  (AR 305.)  The employer also confirmed that Plaintiff was not required to do any
    lifting in connection with his occupation.  (AR 305; *see also, e.g.*, AR 308 ("Lifting:
    Never.").)

10. Defendant obtained Dr. Gee's medical records for Plaintiff.  (AR 237.)  Although
    Plaintiff reported experiencing migraines at that time, Dr. Gee thought this was "more of
    a tension component of the pain and discomfort as opposed to migraine."  (AR 240.)  At
    the initial and subsequent visits, Dr. Gee recorded normal review of system and exam
    findings, including the following: "Neurological: . . . no confusion, no disorientation, no
    convulsions, no limb weakness . . . Psychological: No anxiety and no persistent anxiety
    about recurrent panic attacks. No Depression."  (AR 238 (9/26/18 note); *see also* AR 228
    (12/5/18 note); AR 220 (4/15/19 note); AR 217 (9/16/19 note ("Negative for psychiatric
    symptoms.")).)  Dr. Gee also recorded the following findings: "PSYCHIATRIC: Alert and
    oriented. Knowledge is intact. No language deficits. Normal attention span and
    concentration."  (*See, e.g.*, AR 239 (9/26/18 note) and AR 217 (9/16/19 note).)  Dr. Gee's
    notes also reflected normal neurological exam and motor testing/strength exam results.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                      Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

(AR 239-40 (9/26/18 note).)  Dr. Gee has concluded that Plaintiff's "depression likely is impeding the cognitive issues."  (AR 218.)

11. In a July 17, 2019, treatment note by Dr. Linda Helfend, she stated that Plaintiff's "[n]europsych testing showed normal brain functioning."  (AR 328.)  Dr. Gee had a similar assessment of the neuropsychological testing, as reflected in a treatment note dated April 15, 2019, in which Dr. Gee wrote as follows: "[Plaintiff] has been doing alright. He had neuropsychologist assessment and he performed well."  (AR 219.)

12. At that time, Defendant told Plaintiff that his disability claim was subject to the Policy's limited duration period for a mental disorder.  (AR 212.)  Thereafter, Defendant sent a claim acknowledgment letter to Plaintiff confirming Defendant's understanding that Plaintiff was seeking disability benefits due to a cognitive disorder.  (AR 261-62.)

13. Defendant approved Plaintiff's disability claim, conveying to Plaintiff in a letter dated December 4, 2019, that the approval was based on a mental disorder subject to the Policy's 24-month limitation.  (AR 405.)

C.      **Medical Appointments Following Approval of Plaintiff's Disability Claim**

14. In a January 2020 APS, Dr. Gee stated that Plaintiff's limitations included "[n]o driving to limited driving" and "poor work ability due to cognitive loss."  (AR 624.)

15. According to the Social Security Administration's ("SSA") decision regarding Plaintiff's disability, Plaintiff attended a consultive psychological evaluation by Dr. Rosa Colonna, on February 22, 2020.  (AR 908.)  There, Plaintiff reported early-onset Alzheimer's disease, problems with ongoing cognitive and executive functioning, and issues with memory.  (AR 908.)  Dr. Colonna opined that Plaintiff had moderate difficulties in "the ability to understand, remember and carry out detailed instructions; and in the ability to interact appropriately with supervisors, coworkers, and peers."  (AR 908.)  The SSA found Dr. Colonna's opinions persuasive.  (AR 908.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

16. On March 30, 2020, Dr. Seyed Ahmad Sajjadi, who is an assistant professor of neurology at the University of California, Irvine Department of Neurology, stated the following regarding Plaintiff:

> 59-year-old gentleman with around 1 year history of onset of significant apathy and inability to concentrate. He has no past medical history of psychiatric issues. He has a long history of excessive alcohol intake. Previous investigations include an FDG PET scan in April 2019 that had shown a pattern of hypo metabolism in keeping with Alzheimer's disease. He has also had a neuropsychological assessment a year ago that did not show any significant cognitive impairment. He follows with a psychiatrist colleague and is on a cocktail of psychiatric medications. We spent some time discussing the etiology of his perceived problems. I agreed that neuro-degenerative etiology was the most likely. The differentials include Alzheimer's disease versus frontotemporal dementia. The findings of FDG PET scan point towards Alzheimer's disease as the more likely explanation. (AR 2728.)

17. In April 2020, Dr. Gee wrote a letter stating, "For medical reasons, [Plaintiff] will be placed on medical disability due to the severity of the cognitive loss and depressive symptoms, he is unable to work at this time." (AR 2723.)

18. In July 2020, Dr. John A. Bellone administered a second neuropsychological test. (AR 851.) There, Plaintiff described his current cognitive functioning as follows:

> [Plaintiff] reported vague cognitive symptoms such as difficulty performing tasks (e.g., hanging pictures on the wall) and occasionally forgetting information (e.g., directions when driving). However, he said that his memory is 'not that bad' and that symptoms have been relatively stable since the prior neuropsychological evaluation on 3/26/19. At the 2019 eval, he had presented with complaints of anhedonia and apathy that had a relatively acute onset in January, 2019, as well as worsening forgetfulness and concentration difficulty. He had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

performed within normal limits on all measures administered at that time. Mood has improved since his prior eval and he is talking/socializing much more than he had been – however, mood and degree of socialization have not returned to baseline. There is no evidence of parkinsonism or other motor changes. Activities of daily living (ADLs) are reportedly intact.

Objective testing revealed mixed difficulties in learning/memory, executive functioning, and processing speed.

. . .

Given mixed findings on measures of performance validity/effort (he failed one standalone measure but passed another), his test results should be interpreted with caution – i.e., it is possible the results do not represent his true abilities.

. . .

[Alzheimer's disease ("AD")] is relatively rare in [Plaintiff]'s age range (especially with no family history), and does not typically first present with psychiatric symptoms (i.e., anhedonia and apathy) . . . an updated PET scan showed no change in metabolic activity – if AD were present, reduced temporoparietal metabolic activity would have been predicted over the year. To reiterate, it is possible that [Plaintiff] has atypical, early-onset AD, but this does not fully fit with the existing data/presentation.  (AR 851-52.)

19. In July 2020, Plaintiff had his annual physical exam with Dr. Elwyn Rexinger and Plaintiff did not report any neck pain or discomfort.  (AR 756-57.)  Dr. Rexinger's relevant exam findings were completely normal: "Musculoskeletal: no joint pain and no back pain . . . Neck: Appearance of the neck was normal with no masses or asymmetry. Trachea showed no abnormalities. Thyroid showed no abnormalities. Neurologic: . . . Motor Strength of the upper extremities was normal."  (AR 756-57.)  Dr. Rexinger's "Assessment" did not include cervical or neck pain or discomfort.  (AR 757.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                         Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

20. Defendant sent a questionnaire to Dr. Helfend, asking her to identify Plaintiff's "significant symptoms and the critical mental status examination findings." (AR 555-56.) In the completed questionnaire Dr. Helfend returned to Defendant, she stated that Plaintiff "can't play golf like [he] used to," he "[h]ad some difficulty driving to [her] office," and he "[g]ets lost going to [the] grocery store." (AR 556.)

21. Dr. Gee's records included a report of Plaintiff's second PET scan performed on April 27, 2020, stating as follows: "No interval change in mild FDG activity . . . CONSTITUTIONAL: Patient appears well nourished, well developed and hydrated [/] PSYCHIATRIC: Alert and oriented. Knowledge is intact. No language deficits, Normal attention span and concentration. Pleasant affect. Speech fluent. . . . No motor or sensory deficits. Fine motor skills are normal." (AR 730, 741.) Dr. Gee also wrote that "[Plaintiff's] neuropsychology assessment did not suggest AD. He poses risks nonetheless." (AR 588.)

22. On November 3, 2020, Plaintiff received a favorable decision from the SSA regarding his disability claim. (AR 905.) There, Administrative Law Judge Robert Lenzini (the "ALJ") found that Plaintiff "has the following severe impairments: neurocognitive disorder, unspecified; depression; and cervical degenerative disc disorder (DDD)." (AR 905.) The ALJ acknowledged Plaintiff's report of Alzheimer's disease but found "there is no objective medical evidence documented by an acceptable medical source to support this condition to be a medically determinable impairment since the alleged onset date." (AR 906.) The ALJ also stated that "[Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours out of an eight-hour day; sit six hours out of an eight-hour day; . . . He is limited to simple, routine tasks; simple work-related decisions; occasional contact with coworkers; and no direct interaction with the public." (AR 906.)

23. On May 19, 2021, Defendant reminded Plaintiff that his claim was subject to the 24-month mental disorder limitation. (AR 712.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                          Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

24. On June 6, 2021, Plaintiff expressed his disagreement, stating that "[he] believe[s] [his] disabling condition is not subject to the maximum benefit period of 24 months." (AR 796.) Defendant received a letter from Plaintiff's then-attorney Roger Hutchinson who stated that Plaintiff has an "organic cognitive disorder" and "suffers from cervical disk degeneration which causes him significant functional limitation." (AR 896.) Hutchinson also enclosed a three-year old cervical spine MRI report from December 2018, showing "[m]ild to moderate degenerative disc disease" and a copy of the decision by the SSA. (AR 898, 902.)

25. Defendant agreed to pay benefits beyond the 24-month period under a reservation of rights while Defendant further evaluated the Plaintiff's disability claim. (AR 918.)

26. In Dr. Gee's August 2021 APS, Dr. Gee reported that Plaintiff had "mild cognitive impairment" and fatigue, with no mention of a cervical or neck complaints in the "Diagnosis" and "Symptoms" sections of the APS. (AR 2218-19.)

27. On August 4, 2021, Dr. Joseph Antaki attended a forum discussion regarding Plaintiff, stating the following: "Though the Insured has had reported cognitive issues, NP [nurse practitioner] testing has been referenced as normal and the brain imaging does not show abnormalities in the hippocampus or lateral parietal and posterior temporal cortex that would be expected in the setting of AD." (AR 846-47.)

28. In an August 6, 2021, letter, Dr. Antaki states that he spoke with Dr. Gee. (AR 860.) According to Dr. Antaki, Dr. Gee told him Plaintiff's neuropsychological testing report concluded that Plaintiff has MCI [mild cognitive impairment] and "[t]hough this could progress to dementia," Dr. Gee did "not have information to support a diagnosis of dementia at this time." (AR 860.)

29. In the same month, after Dr. Antaki reviewed Plaintiff's medical records, he stated the following:

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

The records describe the Insured reporting cognitive dysfunction. He has been treated for a behavioral health condition known to cause such dysfunction and for which R & Ls have been supported. Though non-BH conditions have been considered, within a reasonable degree of medical certainty, the results of the Insured's evaluations do not support the presence of a neurodegenerative or other non-BH condition affecting the brain. (AR 865.)

. . .

Though Alzheimer dementia (AD) was considered to be a possible etiology, this is a "relatively rare" condition in the age range ("early-onset") of the Insured as noted by the neuropsychologist, Dr. Bellone. The records also indicate the Insured did not have a family history of Alzheimer disease, inconsistent with early onset AD. Though the Insured had abnormalities described on PET scanning that were interpreted as supporting the presence of Alzheimer disease: The abnormal distribution described was not as would be typically seen in Alzheimer dementia (does not describe hippocampal abnormalities) there was absence of progression when two PET scans were compared one year apart (4/2019 and 4/2020) inconsistent with a neurodegenerative disorder which would be expected to show progression as assessed by functional brain imaging. The Insured underwent evaluation with a lumbar puncture performed by Dr. Gee and the results did not describe abnormalities to support a non-BH condition. The CSF protein and glucose were normal, the cell counts did not support the presence of infection, and the AP reported at the time of AP contact that "tau protein" (a marker for Alzheimer disease) was negative. . . . At the most recent visit on 4/15/21 (more than two years after claiming disability) with Dr. Gee (a Tele-health visit), the Insured reported ongoing difficulty with concentration and sleepiness but "no frank memory impairment"; the physical exam report describes the Insured as being: -alert and oriented -knowledge is intact -no language deficits -normal attention span and concentration -speech fluent [/] This would be inconsistent with a neurodegenerative

_____

**CIVIL MINUTES – GENERAL**                                                    **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

condition of the brain which if resulting in support for R & Ls beginning over two years ago would be expected to be progressive with an increasingly abnormal presentation on exam.  (AR 864.)

30. Defendant then arranged for Dr. Vaughn Cohan, board-certified neurologist, to review Plaintiff's file.  (AR 868-70.)  Dr. Cohan summarized his findings and opinions as follows:

> In the six months prior to the claimant's first date of absence from work, he offered no complaints of speech or cognitive impairment. . . . He was diagnosed with moderately severe depression. He offered cognitive complaints only when he indicated that he was no longer able to work. Neuropsychological testing performed in March 2019 revealed no evidence of organic cognitive impairment. The claimant's symptoms were thought to be of psychological origin. Subsequent neuropsychological testing performed in July 2020 demonstrated mixed findings on measures of performance validity/effort such that the examiner stated that the test results should be interpreted with caution. The relatively acute onset of symptoms, the absence of gradually progressive cognitive issues, the absence of a family history of dementia, and the claimant's age at onset of cognitive complaints would be atypical of a diagnosis of Alzheimer's disease. PET scans performed one year apart were stable and did not demonstrate progression of findings that would be expected with Alzheimer's disease. CSF (Cerebral Spinal fluid) findings revealed normal cell count, glucose, protein, and Tau protein (a marker for Alzheimer's dementia). As recently as April 15, 2021, the speech and cognitive examinations revealed no significant abnormalities. It is my opinion that the available information supports a behavioral health etiology (not an organic etiology) to account for the claimant's complaints."  (AR 869.)

31. On September 13, 2021, Plaintiff underwent a cervical spine X-ray which found the following: "Osteopenia with moderate degenerative change. Flexion extension views

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

show limited range of motion but no dynamic instability. Fairly severe facet arthropathy and uncovertebral joint spurring and moderate cervical foraminal stenosis." (AR 925.) The X-ray impression was that Plaintiff had "[m]oderate to severe degenerative change." (AR 925.)

32. On September 28, 2021, Plaintiff attended a doctor's appointment with Dr. Gee in which Plaintiff was assessed for cervical disc disease and cervical radiculopathy. (AR 1041.) Dr. Gee included cervical disc disease and cervical radiculopathy in his assessment, added that, "given the lack of symptoms," this does not appear to be surgical, and noted Plaintiff's admission that his "[p]ain and discomfort is bearable." (AR 1036.) Dr. Gee, who routinely examined Plaintiff, recorded "[n]ormal movement of the head and shoulders" and "[f]ine motor skills are normal." (AR 1056, 1065-66, 1073.)

33. Dr. Gee referred Plaintiff to physical therapy ("PT"), and Plaintiff was evaluated on October 6, 2021. (AR 2011-12.) On October 21, 2021, Plaintiff told his physical therapist that "his neck was feeling ok today with no additional discomfort," (AR 1990), and the "Subjective" section of the subsequent three PT notes do not include any report of neck pain or discomfort, (AR 1989-90).

34. In Dr. Gee's November 2021 APS, Dr. Gee stated that Plaintiff had a diagnosis of cervical disc disease, pain and impaired range of motion, and mild cognitive impairment, and that Plaintiff should limit his activity straining his neck. (AR 2313-14.) Though, Dr. Gee left empty the section for "Current Limitations (activities the patient cannot do)." (AR 2314.)

35. Dr. Antaki wrote a letter to Dr. Gee and asked if he agreed or disagreed that the information in the records did not support restrictions or limitations due to cervical spine degenerative changes that would preclude Plaintiff from performing his occupational activities. (AR 2445-46.) On December 15, 2021, Dr. Gee signed and returned the letter without stating whether he agreed or disagreed with Dr. Antaki's opinion. (AR 2445-46.) Twice, Dr. Antaki tried calling Dr. Gee to get further information but was unable to get Dr. Gee on the line. (AR 2457.)

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                                   Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

36. Defendant asked Dr. Antaki and Dr. Cohan to review all of the updated file information in December 2021 and January 2022, and they each confirmed that the evidence did not support restrictions and limitations due to any condition other than a mental disorder. (AR 2459-62, 2467-69.)  Regarding cervical spine conditions, Dr. Antaki noted the following:

> Though the Insured has degenerative disease of the cervical spine with moderate to severe foraminal stenosis as described on the 9/24/21 MRI, the records do not support the Insured would be incapable of performing the physical occupational demands as described above because . . . physical exam reports from the [attending physician] describe: No motor or sensory deficits [/] No pronator drift [/] There is normal coordination on finger to nose and rapid alternating movements [/] At the 10/6/21 evaluation with physical therapy: Motor strength of the upper extremities was graded at 4, 4+, or 5/5, consistent with the ability to move upper extremity muscle groups against resistance. Grip strength was recorded at up to 30 kg. The imaging studies identified multi-level disc disease without 'dynamic instability' or symptoms warranting surgical intervention and the Insured reported improvement with chiropractic care. Though the Insured has multi-level degenerative disc disease, the records do not support associated motor abnormalities that preclude the Insured from performing the physical occupational activities, including computer use while following posture guidelines and incorporating 'micro' breaks.  (AR 2460.)

37. In a Forum discussion held on December 3, 2021, vocational consultant Mary Coultier identified Plaintiff's occupational duties and requirements as follows:

> This Insured was employed as a Mechanical Project Team Leader, which is consistent with a Construction Project Manager. The duties of Construction Project Managers are managerial. They handle the planning, staffing levels, subcontractors and deal with the budget. The crew members typically report to the Construction Project Manager for

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

their assignments and larger companies have Construction Managers that work directly with the construction workers; the Construction Manager will provide the Construction Project Manager with updates and issues and the Construction Project Manager uses that information, provides direction, prepares reports and resolves any issues. While Construction Project Managers do a significant amount of work from the office, or construction trailer in some instances, they must go to the construction sites to ensure safety processes are being followed, to assess progress, resolve issues, view assets and quality of work and meet with individuals involved in the project. They do not go to the construction site daily. The Insured mentioned lifting/carrying ladders and parts, but these tasks are typically done by the construction workers, and if he is lifting these objects, it is the manner in which he performed his occupation. It is not required on the job description, or the Insured's description of his duties, and is not an essential duty of Construction Project Managers. . . . this occupation typically requires Light Work . . . ."  (AR 2405.)

38. After paying benefits under reservation of rights beyond the 24-month period ending August 12, 2021, through January 11, 2022, Defendant determined Plaintiff was not disabled due to any condition outside the 24-month mental disorder limitation and conveyed that determination to him on January 12, 2022.  (AR 2483-95.)

39. On January 28, 2022, Dr. Andres Betts evaluated Plaintiff for his history of persistent left-sided cervical pain, numbness in his right-hand, tingling, and weakness.  (AR 3340.) Dr. Betts found the following: "Range of Motion: He has full cervical range of motion including flexion, extension, full right and left lateral rotation. [/] Neck: He has no tenderness over the right or left greater occipital nerves. No tenderness over the posterior cervical spinous processes. No tenderness over the right or left cervical fact joints. [/] Motor Exam: He has full 5/5 motor strength in both upper extremities. . . . "  (AR 3341.) Dr. Betts also noted the following: "[Plaintiff's] pain tends to be worse while he is reaching or grasping, or while driving. It is improved with rest. He does have symptoms in his left hand as well. He has tried physical therapy but continues to have pain that he

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

rates at 7 to 8 out of 10." (AR 3340.) Dr. Betts further noted that Plaintiff's MRI "shows multilevel neuroforaminal stenosis, particularly at C6-7 with a 4 mm disc disease and severe neuroforaminal stenosis and moderate at C5-6, C4-5, and C3-4." (AR 3341.) Dr. Betts suggested "a trial of cervical epidural steroid injection which may help relieve some of Plaintiff's symptoms but due to the severity of his MRI findings he will likely require at least a surgical consultation for the severe findings but hopefully he will have some improvement with epidural injection." (AR 3441.)

40. Nurse Practitioner Kathleen Marie Furlong's evaluation of Plaintiff on January 10, 2022, stated that Plaintiff was negative for myalgias and had intact motor strength, but demonstrated mild abnormalities on exam. (AR 3289-92 ("Motor 5/5" and "Limited cervical spine ROM. Paraspinal muscle tension").)

41. On July 12, 2022, Plaintiff submitted his administrative appeal to Defendant, requesting Defendant to reverse Defendant's decision on Plaintiff's disability claim. (AR 3285.) This appeal included an affidavit signed by Plaintiff in which he explained his job duties such as climbing ladders, operating roof hatches to inspect and supervise work on the roof, opening heavy doors, and having to crouch in air handling equipment, attic bases, and in equipment rooms below pipes. (AR 3288.)

42. Based on Plaintiff's assertion that his occupation required him to lift objects and climb ladders, Defendant's vocational consultant reviewed the available material and noted as follows: "The Insured mentioned lifting/carrying ladders and parts, but these tasks are typically done by the construction workers, and if he is lifting these objects, it is the manner in which he performed his occupation. It is not required on the job description, or the Insured's description of his duties, and is not an essential duty of Construction Project Managers . . . this occupation typically requires Light Work . . . any physical demands above and beyond those described in the vocational reviews would be specific to the employer and not as the regular occupational duties are performed." (AR 3332-33.)

43. Defendant also referred Plaintiff's file to Dr. Arlen Green, an independent physical medicine and rehabilitation physician, who confirmed "there are not any non-BH [behavioral health] restrictions and limitations (R&Ls) that would preclude the claimant

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

from performing the defined occupational demands as of 01/12/22 – present."  (AR 3348.)

44. After reviewing Plaintiff's file and the medical reports, Defendant upheld the determination that Plaintiff was not disabled under the Policy beyond August 11, 2021, due to any condition other than a mental disorder.  (AR 3378-85.)

## II.    Conclusions of Law and Analysis[2]

1. The court has jurisdiction over this matter under ERISA.  "ERISA creates a federal cause of action, with concurrent state and federal jurisdiction, over claims by an employee 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Clorox Co. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 779 F.2d 517, 521 (9th Cir. 1985) (quoting 29 U.S.C. § 1132(a)(1)).  Accordingly, the court has jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

2. "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.  The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.  Judgment must be entered under Rule 58."  Fed. R. Civ. P. 52(a)(1).  Pursuant to Rule 52, the court conducts a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999).

---

[2] Any conclusion under this category that is a finding of fact is also hereby adopted as a finding of fact.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                              Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

### A.  Standard of Review

3.  The parties agree that the court should apply a de novo standard of review to Defendant's decision to terminate Plaintiff's long-term disability ("LTD") benefits.  (Pl. Br. at 15; D. Br. at 19-20.)[3]  And the court finds that applying de novo review in this case is appropriate.  *See Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 688 (9th Cir. 2017) ("Where a plan grants discretion to an administrator to determine benefits, we ordinarily review for abuse of discretion.  By statute, however, California has voided such provisions conferring discretionary authority to ERISA plan administrators such as Aetna.") (citing Cal. Ins. Code § 10110.6(a)).

4.  A court applying de novo review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).  Put another way, "[w]hen a district court conducts a de novo review of a benefits denial, it evaluates the plan administrator's reasons for denying benefits without giving deference to its conclusions or opinions." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1188 (9th Cir. 2022).  "Generally, the court's review is limited to the evidence contained in the administrative record." *Jill T. v. California Physicians Serv.*, 2024 WL 4654265, at *8 (N.D. Cal. Oct. 31, 2024) (citing *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (explaining that in a de novo ERISA case, "extrinsic evidence could be considered only under certain limited circumstances")).  "[T]he District Court's 'de novo review of the parties' submissions and resolution thereof, can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." *Porco v. Prudential Ins. Co. of Am.*, 682 F. Supp. 2d 1057, 1071 (C.D. Cal. 2010) (quoting *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003)).  The court "conduct[s] an independent and thorough inspection of the Administrative Record without affording any deference to the plan administrator's findings" and "freshly evaluate[s] whether [Plaintiff] was disabled within the terms of the Polic[y] . . . and decide[s] which parties' conflicting evidence is more likely to be true." *Radmilovich v. Unum Life Ins. Co. of Am.*, 701 F. Supp. 3d 984, 997 (C.D. Cal. 2023).

_____

[3] All the citations refer to CM/ECF pagination.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                     Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

### B.    De Novo Review of Defendant's Decision

5.  Defendant paid Plaintiff disability benefits through the Policy's 24-month mental disorder benefit period.  (AR 405.)  Once this benefit period ran its course, Plaintiff had to demonstrate a disability outside the mental disorder provision that qualifies under the Policy.  The issue before the court is whether Defendant's determination that Plaintiff was not disabled under the Policy, after the 24-month mental disorder limitation period expired, was correct, (AR 2483-95).  *See Abatie*, 458 F.3d at 963.

6.  The court "determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010).

7.  As discussed in Section I.A, an individual is considered disabled under the Policy if the individual (1) cannot perform with reasonable continuity the substantial and material acts necessary to perform the individual's usual occupation in the usual and customary way and (2) chooses not to work at any occupation.  (AR 3418.)

8.  The principal duties of a Project Team Leader include but are not limited to: (1) planning, executing, and controlling assigned projects; (2) securing new work and change orders from existing customer base; (3) acting as a technical resource for sales, assisting in project development efforts, and performs pre-bid reviews; (4) recruiting, hiring, and supervising resources to staff the project team; (5) reviewing and interpreting contract terms and conditions; (6) coordinating the drawing of layouts/detailing for project job installation; (7) analyzing financial reporting systems and project schedules; and (8) providing ongoing cost and estimates analysis reporting.  (AR 311.)

9.  Plaintiff completed an occupation description form in which he identified his occupational duties as project management and added that he spent 40 hours per week managing the company's business, such as budgeting, scheduling, billing, and customer relations.  (AR 78.)  Plaintiff confirmed his occupation did not require physical activity,

_____

**CIVIL MINUTES – GENERAL**                                                    **18**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

such as sitting, standing, walking, pushing, pulling, and lifting, more than occasionally, which was defined as 1% to 33% of the time spent during an 8-hour workday.  (AR 79.)

10. The court now considers whether Plaintiff was able to perform with reasonable continuity the substantial and material acts necessary to perform his job in the usual and customary. The court evaluates (1) Plaintiff's evidence and (2) Defendant's evidence.

### 1.     Plaintiff's Evidence

11. To demonstrate Plaintiff is disabled under the Policy, Plaintiff relies on the SSA's decision.  (Pl. Br. 16-17.)  There, the ALJ found that Plaintiff "has the following severe impairments: neurocognitive disorder, unspecified; depression, and cervical degenerative disc disorder."  (AR 2554.)  The ALJ further found that Plaintiff has been under a disability as defined in the Social Security Act since February 12, 2019.  (AR 2559.)  The ALJ also stated that Plaintiff "can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours out of an eight-hour day; sit six hours out of an eight-hour day; . . . He is limited to simple, routine tasks; simple work-related decisions; occasional contact with coworkers; and no direct interaction with the public. . . . The claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorder and in the mental disorders listings."  (AR 906.)

12. "Social Security disability awards do not bind plan administrators, but they are evidence of disability."  *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011).  Accordingly, the court finds this evidence is persuasive in demonstrating that Plaintiff is disabled.  However, the court finds the ALJ's determination provides limited support in demonstrating Plaintiff is disabled under the Policy for two reasons.  First, Plaintiff was deemed disabled under the Social Security Act, not the Policy, and the record before the SSA was more limited compared to the record before Defendant's in deciding whether to terminate Plaintiff's LTD benefits based on timing.  Second, the ALJ described Plaintiff's physical functional capacity which appears sufficient to sufficiently perform his job.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                     Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

13. Plaintiff relies on several medical records by Plaintiff's treating physicians to demonstrate a cognitive disorder and degenerative disc disease. (Pl. Br. 17-26.)  For example, Plaintiff relies on the medical examination of Plaintiff and his records.  (*See, e.g.*, AR 250 ("Mild to moderate degenerative disc disease is seen."); AR 898 (similar); AR 925 ("Moderate to severe degenerative change."); AR 2903 ("Decreased FDG activity in the anterior temporal lobes and superior parietal lobes consistent with Alzheimer's disease.").)

14. Plaintiff also points to his physical therapy evaluation in which he explained his pain level was at best 1 out of 10 and at worst 8 out of 10. (AR 2011.)  Plaintiff further explains how reading, lifting, and activities of daily living make the pain worse.  (AR 2011.)  During a November 8, 2021, physical therapy session, Plaintiff had "some numbness and tingling into his hands and occasional headaches."  (AR 1989.)  At the January 2022, session, Plaintiff reported "getting brain fog and having tingling on both hands that comes and goes."  (AR 3312.)

15. The court finds Plaintiff's evidence persuasive in demonstrating that he is disabled in some form.  However, the court observes that Plaintiff does not provide evidence certified by a physician, confirming that his purported cognitive impairment is an organic such that it would fall under the Policy.

16. For example, Plaintiff relies on the evaluation of Dr. Sajjadi who found that Plaintiff's PET scan points towards Alzheimer's disease as the more likely explanation.  (Pl. Br. at 10.)  The court notes that Dr. Sajjadi did not diagnose Plaintiff with Alzheimer's disease, and it appears that Dr. Sajjadi's evaluation relied on Plaintiff's first PET scan, and did not include Plaintiff's second PET scan which showed that Plaintiff's abnormalities did not progress.  (*Compare* AR 2728 *with* AR 730.)

### 2.    Defendant's Evidence

17. Defendant points to records from several physicians that demonstrate Plaintiff is not disabled under Policy after the 24-month mental disorder limitation period expired.  The court addresses the different evaluations below.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

18. First, after Dr. Antaki reviewed Plaintiff's medical materials, he stated that "the results of the Insured's evaluations do not support the presence of a neurodegenerative or other non-BH condition affecting the brain." (AR 865.) As excerpted above in Section I.C, Dr. Antaki explained that Alzheimer dementia, which was considered a possibility, is relatively rare Plaintiff's age range, Plaintiff does not have a family history of Alzheimer dementia, and the abnormalities in Plaintiff's PET scan did not support a non-BH condition. (AR 864.) According to Dr. Antaki, Dr. Gee told him the neuropsychological testing report concluded that Plaintiff has MCI [mild cognitive impairment], and Dr. Gee explained that "[t]hough this could progress to dementia," Dr. Gee did "not have information to support a diagnosis of dementia at this time." (AR 860.) The court finds this evidence persuasive in concluding that Plaintiff was not disabled under the Policy due to a non-BH condition given Dr. Antaki's assessment.

19. Second, Dr. Bellone drafted a report based on a clinical interview with Plaintiff, review of available medical records, and neuropsychological testing. (AR 851.) Dr. Bellone noted that Plaintiff had "vague cognitive symptoms such as difficulty performing tasks (e.g., hanging pictures on the wall) and occasionally forgetting information (e.g., directions when driving). However, [Plaintiff] said that his memory is 'not that bad' and that symptoms have been relatively stable since the prior neuropsychological evaluation on 3/26/19. At the 2019 eval, he had presented with complaints of anhedonia and apathy that had a relatively acute onset in January, 2019, as well as worsening forgetfulness and concentration difficulty. He had performed within normal limits on all measures administered at that time. Mood has improved since his prior eval and he is talking/socializing much more than he had been – however, mood and degree of socialization have not returned to baseline. There is no evidence of parkinsonism or other motor changes. Activities of daily living (ADLs) are reportedly intact." (AR 851.) Dr. Bellone noted the "[o]bjective testing revealed mixed difficulties" but explained that the test results were not reliable because of indicia that Plaintiff did not give full effort. (AR 851.) The court finds this evidence persuasive in concluding that Plaintiff was not disabled under the Policy due to a non-BH condition given Dr. Bellone's assessment that Plaintiff lacked signs indicating a non-BH condition or physical limitations.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

20. Third, Defendant arranged for Dr. Cohan to review Plaintiff's file. (AR 869.) Dr. Cohan stated that neuropsychological testing performed in March 2019 revealed no evidence of organic cognitive impairment. (AR 869.) Dr. Cohan further stated that "the relatively acute onset of symptoms, the absence of gradually progressive cognitive issues, the absence of a family history of dementia, and the claimant's age at onset of cognitive complaints would be atypical of a diagnosis of Alzheimer's disease. Pet scans performed one year apart were stable and did not demonstrate progression of findings that would be expected with Alzheimer's disease. CSF (Cerebral Spinal fluid) findings revealed normal cell count, glucose, protein, and Tau protein (a marker for Alzheimer's dementia). As recently as April 15, 2021, the speech and cognitive examinations revealed no significant abnormalities." (AR 869.) Based on his review of the information, Dr. Cohan opined that Plaintiff had a behavioral health etiology, not an organic etiology. (AR 869.) The court finds this evidence is persuasive in concluding that Plaintiff is not disabled under the Policy due to an organic brain disorder.

21. Defendant asked Dr. Antaki and Dr. Cohan to review all of the updated file information in December 2021 and January 2022, and they each confirmed that the evidence did not support restrictions and limitations due to any condition other than a mental disorder. (AR 2459-62, 2467-69.)

22. Fourth, Plaintiff did not report any neck pain or discomfort during his annual physical exam with Dr. Rexinger in July 2020, and Dr. Rexinger's relevant exam findings were completely normal: "Musculoskeletal: no joint pain and no back pain. . . . Neck: Appearance of the neck was normal with no masses or asymmetry. Trachea showed no abnormalities. Thyroid showed no abnormalities. Neurologic: . . . Motor Strength of the upper extremities was normal. Motor Strength of the lower extremities was normal." (AR 756-57.) The court finds this evidence is persuasive in concluding Plaintiff is not disabled due to a non-BH condition under the Policy because Dr. Rexinger found that Plaintiff had normal physical capabilities.

23. Fifth, Dr. Betts' January 28, 2022, consultation report had the following findings: "Range of Motion: He has full cervical range of motion including flexion, extension, full right and left lateral rotation. [/] Neck: He has no tenderness over the right or left greater

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

occipital nerves. No tenderness over the posterior cervical spinous processes. No tenderness over the right or left cervical facet joints. [/] Motor Exam: He has full 5/5 motor strength in both upper extremities. . . . " (AR 3341.) The court finds this evidence is persuasive in concluding that Plaintiff is not disabled under the Policy because Dr. Betts found that Plaintiff had normal physical capabilities.

24. Finally, Dr. Gee, who routinely examined Plaintiff, has recorded "[n]ormal movement of the head and shoulders" and "[f]ine motor skills are normal." (AR 1056, 1065-66, 1073.) In one of Dr. Gee's 2019 APS regarding Defendant, Dr. Gee initialed in agreement that Plaintiff "does not have physical and/or behavioral health RESTRICTIONS (activities patient should not do) and/or LIMITATIONS (activities patient cannot do)." (AR 92.) The court observes that Dr. Gee did not include any neck or cervical conditions in the list of problems he identified in the "Assessment" section of the May to July 2021 treatment notes. (AR 1056, 1065, 1072-73; 2218-19.)

### 3.    Summary

25. The court finds that Plaintiff has not adequately demonstrated he is disabled under the Policy after the 24-month mental disorder limitation period expired. More specifically, the court finds Plaintiff fails to present sufficient evidence that his cognitive impairment and purported physical limitations prevent from performing, with reasonable continuity, the substantial and material acts necessary to perform his job in the usual and customary way.

26. Regarding his job duties, the court finds that Plaintiff's job duties as a Mechanical Project Team Leader, *see* Section II.B, *supra*, did not require significant physical activity and appear managerial in nature. Plaintiff's job was to supervise other construction workers and involved limited physical demands.

27. The court finds that Defendant provides persuasive evidence that Plaintiff did not suffer a non-BH condition, or other physical limitations, that deem him disabled under the Policy, after the 24-month mental disorder limitation period expired. As discussed above, *see* Section II.B.2, Defendant provides multiple medical evaluations that demonstrate

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

Plaintiff's condition does not prevent him from sufficiently performing his duties as a Mechanical Project Team Leader.

28. Although Plaintiff asserts that his records demonstrate a diagnosis of a cognitive impairment, "a true medical diagnosis does not by itself establish disability. . . . Sometimes their medical conditions are so severe that they cannot work; sometimes people are able to work despite their conditions; and sometimes people work to distract themselves from their conditions." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004).  Here, Plaintiff fails to provide sufficient evidence linking his purported medical condition to the performance of his job duties such that he would be disabled under the Policy, after the 24-month mental disorder limitation period expired.

29. Even if the court were to adopt Plaintiff's description of his job duties[4], the court would still find that Plaintiff fails to adequately demonstrate he is disabled under the Policy, after the 24-month mental disorder limitation period expired.

30. In sum, the court finds Plaintiff has not met his burden to demonstrate that he is disabled under the Policy after the 24-month mental disorder limitation period expired.  *See Ibrahim v. Bayer Corp. Disability Plan*, 584 F. App'x 743, 745 (9th Cir. 2014) ("The administrator had received an opinion to that effect from a consulting physician, Dr. Bill Hennessey, who examined Ibrahim's job description and concluded that she was capable of doing her job.  The administrator was entitled to credit Dr. Hennessey's opinion rather than the conclusory and belated opinion of Dr. Yip, Ibrahim's treating physician."); *Frost v. Metro. Life Ins. Co.*, 320 F. App'x 589, 592 (9th Cir. 2009) ("MetLife was not required to have its consultants examine Frost or consult with her treating physicians. Nor was

_____

[4] According to Plaintiff, his job required him to walk for extended periods of time; sitting at least 6 hours a day; standing, climbing, balancing, stooping, twisting, kneeling, crouching, reaching, using foot, controls, and driving; lifting 10 to 20 pounds, driving to construction sites and evaluating issues which involves climbing ladders, opening heavy doors, operating roof hatches to inspect and supervise work on the roof, and crouching in air handling equipment, attic bases, and equipment rooms below pipes.  (AR 138, 308, 2485, 3288 3333.)

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01860-FWS-DFM                    Date: February 25, 2026
Title: Edward Talley v. Provident Life and Accident Insurance Company

MetLife required to give greater weight to a treating physician than an examining physician."). The court therefore concludes that Defendant correctly denied Plaintiff LTD benefits under the Policy.

### III.    Disposition

For the reasons described above, the court finds that Defendant correctly denied Plaintiff LTD benefits under the Policy. Accordingly, the court **AFFIRMS** Defendant's decision denying Plaintiff LTD benefits. The court will enter judgment consistent with this order.

_____